# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ROXANNE WHARTON,

        Plaintiff,

    v.

BAYHEALTH MEDICAL CENTER, INC.,

        Defendant.

Civil Action No. 23-110-RGA

MEMORANDUM OPINION

Gary E. Junge (argued), SCHMITTINGER & RODRIGUEZ, P.A., Dover, DE,

    Attorney for Plaintiff.

Stacy A. Scrivani, Alexis R. Gambale, STEVENS & LEE, P.C., Wilmington, DE; Lisa M. Scidurlo, STEVENS & LEE, P.C., King of Prussia, PA; Michael M. Greenfield (argued), Sasha A. Phillips, STEVENS & LEE, P.C., Philadelphia, PA; Theresa M. Zechman, STEVENS & LEE, P.C., Lancaster, PA,

    Attorneys for Defendant.

January 29, 2024

ANDREWS, U.S. DISTRICT JUDGE:

Before me is Defendant's Motion to Dismiss. (D.I. 12). I have considered the parties' briefing. (D.I. 13, 14, 16). I heard oral argument on January 4, 2024 on a group of cases, including the present action, involving religious discrimination claims with regards to Defendant's COVID-19 vaccine policy. For the reasons set forth below, this motion is DENIED in part and DISMISSED as moot in part.

## I.    BACKGROUND

This case stems from the COVID-19 pandemic and a healthcare provider's efforts to respond to government vaccination policy. The First Amended Complaint (D.I. 6) is the operative complaint and alleges the following facts.

On August 12, 2021, Governor John Carney ordered all Delaware state health care employees either to become vaccinated for the COVID-19 virus by September 30, 2021 or to submit to regular testing for the COVID-19 virus. In November 2021, the Centers for Medicare & Medicaid Services ("CMS") issued a COVID-19 vaccine mandate requiring certain health care facilities, including Defendant, to ensure their staff members were all either vaccinated against COVID-19 or had obtained medical or religious exemptions to taking the vaccine.

Pursuant to Defendant's vaccination policy, employees seeking religious exemption requests were required to submit forms explaining the religious beliefs that formed their basis of their objection to the COVID-19 vaccine. (*See* D.I. 6-1, Ex. A). Employees could attach additional materials, such as letters from religious leaders, to support their exemption request. (*Id.*).

Employees who had their religious exemption requests rejected, and continued to refuse the COVID-19 vaccine, were terminated on February 28, 2022. Plaintiff was one of these

employees.  Plaintiff subsequently filed the present suit raising religious discrimination claims

against Defendant under Title VII (Count I) and the Delaware Discrimination in Employment

Act ("DDEA") (Count II).  *See* 42 U.S.C. § 2000e; DEL. CODE ANN. tit. 19, § 711.  Defendant

moves to dismiss Plaintiff's claims pursuant to FED. R. CIV. P. 12(b)(6).  (D.I. 12).

## II.   LEGAL STANDARD

### A.  Rule 12(b)(6)

Rule 8 requires a complainant to provide "a short and plain statement of the claim

showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  Rule 12(b)(6) allows the

accused party to bring a motion to dismiss the claim for failing to meet this standard.  A Rule

12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint

as true and viewing them in the light most favorable to the complainant, a court concludes that

those allegations "could not raise a claim of entitlement to relief."  *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 558 (2007).

The factual allegations do not have to be detailed, but they must provide more than

labels, conclusions, or a "formulaic recitation" of the claim elements.  *Id.* at 555 ("Factual

allegations must be enough to raise a right to relief above the speculative level . . . on the

assumption that all the allegations in the complaint are true (even if doubtful in fact).").

Moreover, there must be sufficient factual matter to state a facially plausible claim to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The facial plausibility standard is satisfied when the

complaint's factual content "allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged."  *Id.* ("Where a complaint pleads facts that are merely

consistent with a defendant's liability, it stops short of the line between possibility and

plausibility of entitlement to relief." (internal quotation marks omitted)).

3

### B. Failure to Accommodate

Title VII makes it unlawful for an employer to discriminate against an employee based on that employee's religion.  42 U.S.C. § 2000e-2(a)(1).  The statute defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."  42 U.S.C. § 2000e(j).

To establish a prima facie case of religious discrimination under Title VII based on a failure to accommodate theory, an employee must show that (1) the employee "held a sincere religious belief that conflicted with a job requirement," (2) the employee "informed their employer of the conflict," and (3) the employee was "disciplined for failing to comply with the conflicting requirement." *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 490 (3d Cir. 2017).  "Plaintiffs are not required to establish each element to survive a motion to dismiss; they must simply allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of their claims." *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 465 (M.D. Pa. 2022) (citing *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)).

A district court's inquiry into whether a plaintiff has plausibly plead the first prong of a prima facie religious discrimination claim is limited to determining whether the belief is (1) "sincerely held" and (2) religious within the plaintiff's "own scheme of things." *Welsh v. United States*, 398 U.S. 333, 339 (1970) (quoting *United States v. Seeger*, 380 U.S. 163, 185 (1965)).

With respect to the first prong of this inquiry, "[w]hether a belief is sincerely held is a question of fact." *Geerlings v. Tredyffrin/Easttown Sch. Dist.*, 2021 WL 4399672, at *6 (E.D. Pa. Sept. 27, 2021) (citing *Seeger*, 380 U.S. at 185).

With respect to the second prong, determining whether a plaintiff's beliefs are religious "presents a most delicate question." *Africa v. Pennsylvania*, 662 F.2d 1025, 1031 (3d Cir. 1981). "[I]t is nonetheless incumbent upon the court to ensure that the alleged beliefs are rooted in a plaintiff's religion and are entitled to the broad protections guaranteed thereunder." *Aliano v. Twp. of Maplewood*, 2023 WL 4398493, at *5 (D.N.J. July 7, 2023) (citing *Fallon*, 877 F.3d at 490). "The notion that all of life's activities can be cloaked with religious significance" cannot transform an otherwise secular idea into a religious belief. *Africa*, 662 F.2d at 1035. "[T]he very concept of ordered liberty" precludes allowing any individual "a blanket privilege 'to make his own standards on matters of conduct in which society as a whole has important interests.'" *Africa*, 662 F.2d at 1031 (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972)).

The Third Circuit has adopted the three *Africa* factors to differentiate between views that are "religious in nature" and those that are "essentially political, sociological, or philosophical." *Fallon*, 877 F.3d at 490–91 (quoting *Seeger*, 380 U.S. at 164); *Africa*, 662 F.2d at 1032. A judge must determine whether the beliefs in question (1) "address fundamental and ultimate questions having to do with deep and imponderable matters," (2) "are comprehensive in nature," and (3) "are accompanied by certain formal and external signs." *Fallon*, 877 F.3d at 491 (quoting *Africa*, 662 F.2d at 1032) (cleaned up).

The *Africa* court tackled the issue of analyzing non-traditional "religious" beliefs or practices by "look[ing] to familiar religions as models in order to ascertain, by comparison, whether the new set of ideas or beliefs is confronting the same concerns, or serving the same

5

purposes, as unquestioned and accepted 'religions.'" *Africa*, 662 F.2d at 1032 (quoting *Malnak v. Yogi*, 592 F.2d 197, 205 (3d Cir. 1979) (Adams, J., concurring)); *Fallon*, 877 F.3d at 491 (describing the process as considering "how a belief may occupy a place parallel to that filled by God in traditionally religious persons."). The *Africa* factors were adopted as "three 'useful indicia' to determine the existence of a religion" pursuant to this "definition by analogy" approach. *Africa*, 662 F.2d at 1032. Their applicability to a person who professes a more widely recognized, "traditional" religion is a little less obvious.[1] However, because individuals cannot "cloak" all personal beliefs "with religious significance," a court must still scrutinize whether a sincerely held belief, asserted by someone claiming a recognized religion, is sufficiently connected to their religion. *Id.* at 1035; *see Griffin v. Massachusetts Dep't of Revenue*, 2023 WL 4685942, at *5 (D. Mass. July 20, 2023) ("[T]he issue in this case is not whether plaintiff has asserted a plausible claim that she has a personal religious faith. . . . Plaintiff does not claim that she has suffered unlawful discrimination because she believes in God. Rather, she claims that she has suffered unlawful discrimination because she was required to comply with the COVID-19 vaccination requirement. The critical question, therefore, is whether the complaint alleges sufficient plausible facts from which it could be reasonably inferred that being vaccinated against COVID-19 violates a tenet or principle of her religious belief.").

Of course, individuals may have religious beliefs which are not widely accepted within their religion. *See Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 708 (1981) ("The guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect"); 29 C.F.R. § 1605.1 ("The fact that no religious group espouses such beliefs or

---

[1] Plaintiff follows a recognized religion that already meets the three *Africa* factors. (*See* D.I. 6 ¶ 17).

the fact that the religious group to which the individual professes to belong may not accept such belief will not determine whether the belief is a religious belief of the employee or prospective employee."). Beliefs of this nature would, logically, fail to be sufficiently linked to the individual's claimed religion and need to satisfy the *Africa* standard to qualify as religious beliefs.

"[The DDEA] prohibits employment discrimination in statutory language nearly identical to Title VII." *Spady v. Wesley Coll.*, 2010 WL 3907357, at *3 n. 4 (D. Del. Sept. 29, 2010); *see* DEL. CODE ANN. tit. 19, § 711(b). "[Courts] evaluate plaintiffs' DDEA claims under the same framework used to evaluate Title VII claims." *Spady*, 2010 WL 3907357, at *3 n. 4 (citing *Witcher v. Sodexho, Inc.*, 247 F. App'x 328, 329 n. 1 (3d Cir. 2007); *Hyland v. Smyrna Sch. Dist.*, 608 F. App'x 79, 83 n. 5 (3d Cir. 2015) (instructing that "the standards under Title VII and the DDEA are generally the same").

### C. Disparate Treatment

To establish a prima facie case of religious discrimination under Title VII based on a disparate treatment theory, an employee must show that (1) the employee is "a member of a protected class," (2) the employee "suffered an adverse employment action," and (3) "nonmembers of the protected class were treated more favorably." *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 281–82 (3d Cir. 2001). Depending on whether the plaintiff proceeds under a pretext or mixed-motive theory, they must ultimately prove that their protected status was either a "motivating" or a "determinative" factor in the employer's challenged action. *Connelly*, 809 F.3d at 787–88.

### III.   DISCUSSION

#### A.  Failure to Accommodate

At this stage of the case, only one issue exists—whether Plaintiff has sufficiently pled

that the belief upon which her objection to receiving the COVID-19 vaccine was based is a

religious belief.  "[T]o adequately plead a 'religious belief,' a plaintiff must allege some facts

regarding the nature of her belief system, as well as facts connecting her objection to that belief

system." *Aliano*, 2023 WL 4398493, at *5.  "In other words, she must demonstrate that her

objection arises from a subjective belief that is tied to her belief system which meets the *Africa*

factors." *Id.* (citing *Africa*, 662 F.2d at 1032; *Fallon*, 877 F.2d at 492–93 (concluding that the

plaintiff's "anti-vaccination beliefs are not religious" but providing "[t]his is not to say that anti-

vaccination beliefs cannot be part of a broader religious faith; in some circumstances, they can,

and in those circumstances, they are protected")); *see also Brown v. Child.'s Hosp. of Phila.*, 794

F. App'x 226, 227 (3d Cir. 2020) ("[I]t is not sufficient merely to hold a 'sincere opposition to

vaccination'; rather, the individual must show that the 'opposition to vaccination is a religious

belief.'" (quoting *Fallon*, 877 F.3d at 490)); *Griffin v. Massachusetts Dep't of Revenue*, 2023 WL

4685942, at *5 (D. Mass. July 20, 2023); *Ellison v. Inova Health Care Servs.*, 2023 WL

6038016, at *6 (E.D. Va. Sept. 14, 2023) (A plaintiff should "provide[] sufficient allegations

regarding [their] subjective personal beliefs, how those beliefs are related to [their] faith, and

how those beliefs form the basis of [their] objection to the COVID-19 vaccination.").  Defendant

argues that Plaintiff's objection to the vaccine stems from Plaintiff's personal moral code rather

than from her religious beliefs.[2]  (D.I. 13 at 8–16; D.I. 16 at 5–8).

---

[2] Defendant does not challenge Plaintiff's assertion that her religious faith of Roman Catholicism
meets the *Africa* test.  Rather, Defendant argues the beliefs on which Plaintiff's objection to the
vaccine is based are secular beliefs based on Plaintiff's personal moral code, as opposed to

As part of her religious accommodation request submission, Plaintiff included a letter from her priest to help explain her religious beliefs. (*See* D.I. 6-2, Ex. B). Her priest's letter states that Plaintiff "ardently supports the teaching of the Church on the heinous evil of abortion." (*Id.* at 2 of 3). It explains that "receiving any Covid-19 vaccine (all of which were developed using the fetal tissue of aborted babies) would compromise both [Plaintiff's] faith and morals by participating in the murder of unborn children." (*Id.*).

Plaintiff's letter "provides sufficient allegations regarding [her] subjective personal beliefs, how those beliefs are related to [her] faith, and how those beliefs form the basis of [her] objection to the COVID-19 vaccination." *Ellison*, 2023 WL 6038016, at *6. I find that Plaintiff has adequately linked her objection to the COVID-19 vaccines to religious beliefs stemming from Plaintiff's Catholic faith. Other district courts handling similar religious discrimination cases involving the COVID-19 vaccine have found that religious beliefs condemning abortion and murder, when adequately pled, are sufficient to survive at the motion to dismiss stage. *See, e.g.*, *Ellison*, 2023 WL 6038016, at *6–7; *Kather v. Asante Health Sys.*, 2023 WL 4865533, at *4 (D. Or. July 28, 2023); *Aliano*, 2023 WL 4398493, at *7, *9–11; *cf. Winans v. Cox Auto., Inc.*, 2023 WL 2975872, at *4 (E.D. Pa. Apr. 17, 2023) ("The Complaint does not even identify why Plaintiff objects to the use of fetal cell lines in the development of the COVID-19 vaccine; it merely asserts that fetal cell lines were, in fact, used by vaccine developers.").

For the reasons stated above, I find Plaintiff's Complaint plausibly alleges that she had a "sincerely held religious belief, and that [her] objection to receiving the COVID-19 vaccine was

---

religious beliefs that form a part of Plaintiff's Catholic faith. (*See* D.I. 13 at 8–16; D.I. 16 at 5–8). I therefore address only the questions at issue: whether Plaintiff has sufficiently connected her objection to the vaccine to a religious belief tied to her Catholic faith or whether the beliefs that form the basis of Plaintiff's objection would otherwise satisfy the *Africa* standard.

based on that belief." *Aliano*, 2023 WL 4398493, at *4. I therefore will not dismiss Plaintiff's Title VII failure to accommodate claim. As I evaluate Plaintiff's DDEA failure to accommodate claim under the same framework as the Title VII claim, I also decline to dismiss the DDEA claim. *See Spady*, 2010 WL 3907357, at *3 n. 4.

I note that Plaintiff's Complaint and exemption form express other beliefs, in support of her objection to the COVID-19 vaccine, which she argues are also religious in nature. (*See* D.I. 6 ¶ 19, 21; D.I. 6-1, Ex. A, at 3–4 of 7; D.I. 6-2, Ex. B, at 2–3 of 3; D.I. 14 at 3–4). "The complaint should not be 'parsed piece by piece to determine whether each allegation, in isolation, is plausible.'" *Sweda v. Univ. of Pa.*, 923 F.3d 320, 331 (3d Cir. 2019). "[My] obligation is not to read each allegation in isolation nor to nitpick a complaint line by line, paragraph by paragraph." *In re Auto. Parts Antitrust Litig.*, 2014 WL 4272784, at *6 (E.D. Mich. Aug. 29, 2014). Rather, I consider the "well-pleaded factual allegations" using a "holistic approach." *Sweda*, 923 F.3d at 331. Plaintiff has plausibly stated a failure to accommodate claim based on at least one religious belief. I need not address whether Plaintiff's other asserted beliefs might independently qualify as religious beliefs.

### B. Disparate Treatment

Defendant argues that Plaintiff has failed to adequately plead a religious discrimination claim under Title VII based on disparate treatment. (D.I. 13 at 16). Plaintiff claims she has not pled disparate treatment. (D.I. 14 at 20). I agree with Defendant that Plaintiff's assertion of "differential treatment" presents some confusion about whether a disparate treatment claim has been raised. (D.I. 16 at 10 n. 28). Nevertheless, since Plaintiff states she is not now pleading disparate treatment, I accept that she is not, and I will dismiss Defendant's argument as moot.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (D.I. 12) is DENIED in part and DISMISSED as moot in part.

An appropriate order will issue.